UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Malveaux and Causey

JANIE MARIE JARELS

                                   MEMORANDUM OPINION[*] BY

v.      Record No. 0162-22-3           JUDGE RANDOLPH A. BEALES

                                        NOVEMBER 1, 2022

ROANOKE COUNTY DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
James R. Swanson, Judge

(Suzanne Moushegian; Moushegian Law, P.L.L.C., on brief), for
appellant. Appellant submitting on brief.

(Marta J. Anderson, Senior Assistant County Attorney; Kelli C.
Boyer, Guardian *ad litem* for the minor child; Boyer Law, PLC, on
brief), for appellee.[1] Appellee and Guardian *ad litem* submitting on
brief.

Janie M. Jarels (mother) appeals the circuit court's order terminating her parental rights to

her child and approving the foster care goal of adoption. Mother argues that the circuit court erred

in terminating her parental rights because Roanoke County Department of Social Services (the

Department) failed to prove that mother, who has been incarcerated during most of the life of the

child, had been unable or unwilling to remedy the conditions that led to the child's placement in

foster care. Mother also asserts that the Department did not offer substantial services and that

termination of parental rights and adoption were not in the child's best interests. As both parties

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The guardian *ad litem* for the child, Kelli C. Boyer, Esquire, filed a letter with this
Court indicating her support for the Department's position in this case.

waived oral argument in their briefs, this Court now decides the merits of this appeal without oral argument and based on the parties' briefs and the record before us.

BACKGROUND[2]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Mother is the biological mother of the child, who was two days old at the time of removal on September 4, 2020. The child first came to the attention of the Department due to a report of physical abuse and neglect. Mother was incarcerated at the time of the child's birth and returned to jail after she was released from the hospital. The child "lost a bit of weight immediately after birth and hospital staff stated they felt that Ms. Jarels was not feeding [the child] as well as she should." The Department met with mother at the hospital during which mother was cooperative and "explained her CPS history, current/pending criminal charges and expressed her last date of substance use was in May 2020 prior to incarceration." The child "was born substance free."

The Department placed the child in foster care after mother was unable to identify any viable caregivers.[3] After the child had been in foster care for a few weeks, the Department informed

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[3] Mother has an older child who was in the custody of her fiancé, but the fiancé did not petition for custody of the child involved in this appeal. In addition, the child's actual father is unknown. Mother provided the Department with the names of three potential fathers, but, as of the date of the hearing, the Department was unable to confirm the identity of the biological father of the child involved in this appeal.

mother that she "need[ed] to participate in any/all appropriate services offered to her while incarcerated." The Department also instructed mother to "remain substance free." The Department told mother that, upon her release from incarceration, she needed to obtain and maintain suitable housing and employment, maintain contact with the Department, and visit with the child. The Department acknowledged that mother was unable to complete many of these services until she was released from incarceration. The Department was unable to offer services to mother during her incarceration.

In February 2021, mother was released from incarceration but "failed to contact the Department to set up services" or arrange for visitations with the child. Mother testified that this was because she was "hurt" by the removal of the child. Mother failed to attend a foster care review hearing on February 26, 2021, after her release. Mother admitted to using cocaine during her release. Mother was again incarcerated in March 2021, upon the issuance of two capiases. The Department was unaware of mother's whereabouts until after her return to incarceration. After mother's return to incarceration, the Department was unable to meet with her "for some time due to her being in solitary."

Mother completed two classes while incarcerated, "Healthy Minds" and "Changing Offender Behavior." However, mother declined to pursue a drug or substance abuse program within the jail setting because of COVID concerns and because she desired to complete an outpatient program at a substance abuse facility. The Department reported that mother had not requested photos of the child or made any efforts to be in contact with the child during her incarceration. Due to the child's age and the mother's incarceration, mother had no visitations with the child after his birth in September 2020.

As of September 2021, the child had been in foster care for one year and mother remained incarcerated. The Department "reminded [Ms. Jarels] to participate in any programs while

incarcerated including any parenting classes, substance abuse classes and anything else Ms. Jarels may want to participate in." The Department had regular contact with mother during her incarceration. The Department attempted to assist in transferring mother to a substance abuse facility so the Department could help mother "start to work her plan."

At the time of the hearing in the circuit court, mother's projected release date was in June 2022.[4] Mother testified that she planned to live in a halfway house upon release from incarceration. Mother acknowledged that she would not be able to start services until her release in June 2022 and admitted the likelihood that the child would be in foster care for nearly three years before she would be able to complete the necessary services to regain custody.

The Department reported that the child "is thriving in his current foster placement." The report indicated that the child "remains happy and healthy and is meeting all of [the child's] developmental milestones." At the time of the report, the child was "up to date on" medical care and dental needs and attended a "daycare weekly while foster parents work."

Considering mother's failure without good cause to remedy the conditions that led to the child's placement in foster care, the Department petitioned for the termination of her parental rights. On October 26, 2021, the Roanoke County Juvenile and Domestic Relations District Court (the JDR court) terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed the JDR court's rulings to the circuit court.

The parties appeared before the circuit court on December 14, 2021. After hearing the evidence and arguments, the circuit court approved the foster care goal of adoption and found that it was in the child's best interests to terminate mother's parental rights under Code § 16.1-283(C)(2),

---

[4] The record before us on appeal does not reveal whether mother actually left incarceration in June 2022.

which the circuit court did in a final order dated January 18, 2022. Mother now appeals to this Court.

## ANALYSIS

Mother argues that the circuit court erred in terminating her parental rights and approving the foster care goal of adoption. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (alteration in original) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Accordingly, to grant the Department's petition to terminate parental rights under Code § 16.1-283(C)(2), the circuit court was required to find by clear and convincing evidence that (1) "termination was in the best interests of [the child]," (2) "the Department offered 'reasonable and appropriate' services to [mother] to help [her] substantially remedy the conditions which led to or required continuation of [the child's] 'foster care placement,'" and (3) "despite those services, [mother] failed, 'without good cause,' to [timely] remedy those conditions." *Harrison v. Tazewell*

*Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 161 (2004). Indeed, "[s]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

Mother argues that the Department "did not offer any other services to [her] while she remained incarcerated to assist her in remedying the situation that brought [the child] into care." She notes that she took two classes and explains that she did not engage in a drug or substance abuse program "within the jail setting due to COVID and because she desired to complete an out-patient program." Mother acknowledges that during her "month release from jail she failed to appear at the February 26, 2021 hearing in this matter, never contacted DSS, and admitted she was using cocaine during this time."

The Department's duty under Code § 16.1-283(C)(2) to make "'[r]easonable and appropriate' efforts" to help a parent remedy the conditions that led to a child's foster care "can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." *Harrison*, 42 Va. App. at 163 (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338-39 (1992)). In *Harrison*, this Court rejected the father's argument that Code § 16.1-283(C)(2) "required the Department to offer him services during his incarceration" as this requirement would be "patently unreasonable" because "the Department would have had no avenue available to offer Harrison services aimed at assisting him in regaining custody of the child." *Id*. at 163-64. Moreover, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (second alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

Here, the record demonstrates that the child had been in foster care for over fifteen months at the time of the circuit court hearing and that mother had been incarcerated for the duration of the child's life, outside of her release for one month. The only time mother had ever seen the child was at the hospital after giving birth, and mother made no effort to see the child or contact the Department during the month that she was not incarcerated. The Department also presented considerable evidence that the child was thriving in foster care. At the time of mother's projected release date, the child would have already been in foster care for twenty-one months. As mother acknowledged, it is unlikely she would be able to complete the services necessary to regain custody until the child had been in foster care for nearly three years. Furthermore, although substance abuse classes were available while mother was incarcerated, mother declined to attend them. In addition, mother, as noted *supra*, did not attempt to contact the Department to arrange for services or visitation—and had used cocaine during her brief release from incarceration. Finally, during her incarceration, even though the Department provided mother with updates on the child, mother had made no efforts to be in contact with the child.

While mother's incarceration is indeed not sufficient by itself to support the termination of her parental rights, "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination." *Ferguson*, 14 Va. App. at 340. The record contains sufficient evidence to support the circuit court's decision and to support that the Department provided reasonable services to mother under the particular circumstances of this case. Consequently, based on the record before us on appeal, the circuit court

did not err in finding that it was in the best interests of the child to terminate mother's parental rights under Code § 16.1-283(C)(2) and to approve the goal of adoption.[5]

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

*Affirmed.*

---

[5] With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms.*, 46 Va. App. at 265 n.3.